547 A.2d 1304

Jane R. Hyatt and Kenneth R. Hyatt, her husband, Appellants *v.* County of Allegheny and Associated Cleaning Consultants & Services, Inc., Appellees.

162

*Lee Markovitz,* for appellants.

*Frederick N. Egler, Jr., Egler, Anstandig & Garrett,* for appellee.

OPINION BY SENIOR JUDGE NARICK, September 30, 1988:

Jane R. and Kenneth R. Hyatt (Appellants) brought suit in the Court of Common Pleas of Allegheny County against Allegheny County[1] and Associated Cleaning Consultants & Services, Inc. (Appellee) for damages sustained when Jane Hyatt (hereinafter Appellant) suf-

---

[1] The County is not involved in and did not participate in these proceedings on appeal.

fered injuries in a fall at the Greater Pittsburgh International Airport. At the conclusion of Appellant's case, the trial court directed the verdict in favor of Appellee, prompting this appeal.

In reviewing a trial court's grant of a directed verdict, we are guided by the following principles:

> On a motion for directed verdict, the facts must be considered in the light most favorable to the party against whom the motion is made and the court must accept as true all the evidence which supports that party's contention and must reject all the adverse testimony of the party seeking a directed verdict.

*Heffner by Heffner v. Schad,* 330 Pa. Superior Ct. 101, 105, 478 A.2d 1372, 1374 (1984) (citation omitted). Further:

> 'A judge may direct a verdict for a plaintiff only if there are no facts upon which a jury could properly find for the defendant. . . . If there is a conflict of evidence, and the conflict provides a basis upon which a jury could possibly render a verdict for the party against whom the directed verdict is sought, the case must go to the jury. . . . However, the conflict must be real. If there is no more than a scintilla of evidence on the side ruled against, and a jury could not base its verdict upon that evidence, a directed verdict may still be proper.'

*Reimer v. Tien,* 356 Pa. Superior Ct. 192, 198, 514 A.2d 566, 568 (1986) (citations omitted).

At trial, Appellant testified that she was unhurriedly proceeding to her job as a customer service agent for USAir at the Greater Pittsburgh International Airport on December 13, 1982. As she was entering the airport, she passed through one set of automatic glass doors, and proceeded through a second set into the lob-

by. As she was going into the lobby, Appellant testified that her right toe "[caught] on something" or "seemed to go into something" (N.T. 21) and she then fell forward to the floor, injuring her knee. When she turned around to see what had made her fall, she saw that the black rubber edge of the temporary mat placed beyond the door was not lying flat on the floor and the mat itself was not secured by tape. It was established that Appellee owned the temporary mats in the area of Appellant's fall and that it was Appellee's job to place, clean and tape them. It was the company's policy to tape down all four edges of the mats to prevent shifting and curling edges.

The trial court directed the verdict for Appellee because it determined that Appellant presented no evidence 1) to prove that Appellee's mat was the proximate cause of her injuries and 2) to establish that Appellee owed a duty of care to her which it had breached. Appellant challenges both of these determinations on appeal.

First, Appellant argues that she offered sufficient circumstantial evidence to prove that the upturned edge of the mat caused her to fall. Although it is clear that a jury is not permitted to reach a verdict based upon guess or speculation, it is equally clear that a jury may draw inferences from all of the evidence presented. *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 153 A.2d 477 (1959).

It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. Also, it is beyond the

power of the court to say whether two or more reasonable inferences are 'equal'. True enough the trial judge has to do something like this in deciding a motion for new trial based on the weight of the evidence but no such rule governs him in deciding whether a case is submissible to the jury. The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict he seeks.

*Id.* at 138-39, 153 A.2d at 480.

Appellant relies on *Finney v. G. C. Murphy Co.,* 406 Pa. 555, 178 A.2d 719 (1962), in support of her position that circumstantial evidence may be used in order to establish liability. The plaintiff in that case slipped and fell in defendant's store. Upon being lifted to a chair, she saw a quantity of oil on the floor beneath her feet. Although she had not seen the oil before her fall, and could not prove that the substance was the compound the store admitted to using to clean the floors, our Supreme Court, in ordering a new trial, stated:

If direct evidence were absolutely required in trespass cases of the character here in litigation, very few persons who have been injured because of actual negligence on the part of land proprietors could ever prove negligence. Direct evidence would mean that the eventual victim would have to anticipate his hard luck and have persons spying at the place of his preordained culminating misfortune, making notes of all acts of heedlessness on the part of his future tort-feasor and his agents. Of course, if he could anticipate all this there naturally would be no acci-

dent because obviously he would stay away from the preannounced catastrophe.

Cases must be taken as they are, and where logic, reason, fair dealing, inevitable inference and just conclusions, based on reliable circumstances, establish liability the final decision reached is just as trustworthy as one founded on the testimony of eyewitnesses of the neglectful act. The plaintiff in a trespass action is not required to prove, like flashbacks in a motion picture, the precise manner in which the tortious condition developed. Nor is he required to prove with mathematical exactness and caliper precision that the accident could only happen in one manner to the exclusion of all other possibilities in the world of chance and unforeseeable concatenation of circumstance.

*Id.* at 559-60, 178 A.2d at 721.

Appellee has directed our attention to several cases in which it was determined that the circumstantial evidence regarding the cause of the injuries at issue was insufficient to allow the case to go to the jury. Because we find the facts of each to be distinguishable, particularly in light of the above-quoted language from *Finney* and *Smith* (which post-date most of the authorities Appellee cites), we conclude that the trial judge erred in directing the verdict.

In *Reddington v. Philadelphia,* 253 Pa. 390, 98 A. 601 (1916), the plaintiff tripped on a sidewalk, but did not know what she had tripped *in* or fell *over*. One of the three people who came to her aid pointed out a depression in the pavement to her, and concluded that it was the cause of her fall, although he did not see it happen. There was no evidence to show how far away from the hole she was and the evidence was conflicting as to the place she fell. The Supreme Court concluded that a

nonsuit was properly entered because plaintiff had failed to prove her averment that her foot slipped into the depression, causing her to fall. Here, Appellant clearly stated that her toe caught on something or went into something, which was entirely consistent with the cause she sought to establish, *i.e.*, that the upturned edge of the mat caused her to fall.

Similarly, in *Freund v. Hyman,* 377 Pa. 35, 103 A.2d 658 (1954), the Supreme Court upheld the trial court's grant of a nonsuit where the plaintiff was unable to identify the cause of her fall. Although she testified that she fell on a step near a tree, a photograph disclosed that there was a block of pavement near the tree which was slightly higher than the adjoining block, and that there were two steps very nearby. Having no evidence as to how she fell, whether she stumbled, tripped or turned her ankle, the Court concluded that she had failed to make out a *prima facie* case. We note that plaintiff's own evidence, in contrast to the facts before us, disclosed at least two possible objects which could have caused her to fall.

Appellee next cites *Ley v. Bowman* & *Co.,* 46 Dauphin 135 (C.P. Pa. 1938) as factually similar to the instant case. The plaintiff therein tripped while walking in defendant's carpeted store. She testified that a wrinkle came up over her foot, causing her to fall. She did not see a wrinkle in the carpeting either before *or* after her fall. It was held that the plaintiff had failed to establish the cause of her fall. Obviously, these facts are distinguishable from the situation before us, where Appellant was able to identify an object capable of causing her to trip and fall forward immediately after her fall.

Appellee argues that Appellant's testimony on this point is not sufficient to avoid the entry of a directed verdict based on *Cuthbert v. Philadelphia,* 417 Pa. 610, 209 A.2d 261 (1965). In that case, the plaintiff had

tripped while crossing a street. She testified that her foot got caught in the hole by a trolley rail and that she knew that the hole had caused her fall. In reversing a jury verdict for plaintiff, the Supreme Court concluded that she had not proved that the depression in the street was the proximate cause of her fall. Several factors influenced this decision. The plaintiff, with her sister, was crossing an intersection at a crosswalk when a nearby traffic light changed, causing her to become frightened and hurry to complete her crossing. She tripped and fell, was taken to a hospital for treatment and then returned to the scene to see what made her fall. There were trolley tracks in the intersection and a three to four inch deep depression running along the tracks for some length, 18 inches of which extended into the crosswalk. By plaintiff's own testimony, she did not see the defect either before or immediately after her fall and the defect was in that portion of the crosswalk where she said her sister was walking. The trolley tracks themselves could have easily caused the plaintiff's fall, leading the court to conclude that the jury could only guess the cause of her fall from the evidence adduced. Here again, Appellant was not hurrying, and immediately saw the sole noticeable defect to which she attributed her fall.

Finally, Appellee relies on *Farnese v. Southeastern Pennsylvania Transportation Authority,* 338 Pa. Superior Ct. 130, 487 A.2d 887 (1985), a case in which the plaintiff was injured when the bus he was riding upon lurched forward while traveling in a construction zone on Chestnut Street. The exact cause of the jolt was unknown, and the plaintiff did not specify the exact point on Chestnut Street where the accident occurred. Relying on *Cuthbert,* the Superior Court determined that the nonsuit was properly entered. Of course, these facts are readily distinguishable as the plaintiff in *Farnese*

merely alleged that an unseen defect caused the accident. We certainly agree that a jury verdict in that case could have only been the result of impermissible speculation, rather than the result of logical inference of which *Smith* and *Finney* speak.

Appellant has also contested the second ground upon which the trial court's decision to direct the verdict was predicated. The court held that because Appellant was attempting to prove a cause of action in negligence based upon Section 343 of the Restatement (Second) of Torts 1965,[2] it was incumbent upon her to prove that Appellee had notice of the condition she alleged to be dangerous. For this proposition, the trial court relied upon *Moultrey v. Great A & P Tea Co.,* 281 Pa. Superior Ct. 525, 422 A.2d 593 (1980). In *Moultrey,* the plaintiff slipped on a cherry on the floor of defendant's supermarket. The Superior Court held that, as a part of her *prima facie* case, plaintiff was required to prove that the defendant had either actual or constructive notice of the dangerous condition. However, as Appellant points out, the *Moultrey* Court also summarized the exception to that general rule:

> Pennsylvania courts have uniformly held that if the harmful transitory condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his

---

[2] That section provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

authority), then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm. See, e.g., Penn v. Isaly Dairy Company, 413 Pa. 548, 198 A.2d 323, 324 (1964); Finney v. G. C. Murphy Co., 406 Pa. 555, 178 A.2d 719 [1962].

*Id.* at 530, 422 A.2d at 596. We believe that it is the exception which must apply here. When the evidence is viewed in the light most favorable to Appellant, it was established that Appellee was in control of the mats and had adopted a policy of taping all four edges in order to avoid the very type of accident which occurred here.[3] As the Court stated in *Finney* at 561, 178 A.2d at 722: "[w]here one creates a dangerous condition by his own antecedent active conduct, it is unnecessary to prove that he had notice of such condition." (Citation omitted.) Because the Appellant was not obliged to prove Appellee had notice of a problem with its mat at the entrance door, we must conclude that the trial court erred in directing the verdict on that ground.

For the foregoing reasons, the trial court's order is reversed and we must remand for a new trial.

## ORDER

AND NOW, this 30th day of September, 1988, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed and the matter is remanded for a new trial for the reasons set forth in the foregoing opinion.

Jurisdiction relinquished.

---

[3] Appellee's employee testified as follows: "Any time a mat was down, it was required to be taped, all four edges, [. . .] [s]o that the mat would not shift and so that the edges won't curl up and so somebody would [not] trip over it." (N.T. 15-16)